## SEMAGRAPH CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5396.

Circuit Court of Appeals, Fourth Circuit.

Dec. 4, 1945.

Frank A. McCleneghan, of Charlotte, N. C., for petitioner.

Meyer Rothwacks, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss and Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

SOPER, Circuit Judge.

The Semagraph Company petitions for a review of a decision of the Tax Court which approved the determination of income tax deficiencies against the corporation for the taxable years ended March 31, 1939 and March 31, 1940 in the respective amounts of $3,683.65 and $8,919.98. The determination was based on the ground that the corporation was availed of during these years, for the purpose of preventing the imposition of the surtax upon the sole shareholder through the medium of permitting earnings or profits to be accumulated instead of being divided or distributed.

The Revenue Act of 1938, Ch. 289, 52 Stat. 447, Internal Revenue Code, § 102, 26 U.S.C.A. Int.Rev.Code, § 102, provided that in such an event there should be levied and paid for each taxable year upon the net income of the corporation a surtax equal to 25 per cent of the undistributed net income not in excess of $100,000; and further provided that the fact that the earnings or profits of the corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders, unless the corporation by the clear preponderance of the evidence shall prove to the contrary.

The Semagraph Company is a Delaware corporation with its principal place of business in Charlotte, North Carolina. It was incorporated in 1933 and from the beginning its entire stock has been wholly owned by Curtis B. Johnson of that city who has been the publisher and principal owner of the Charlotte Observer, a daily newspaper. He has also been the sole stockholder of the Curtis B. Johnson Corporation which was formerly a personal holding company possessed of assets consisting solely of stocks, bonds, notes and real estate.

Prior to the organization of the taxpayer corporation, Johnson became interested in a machine called the Semagraph, which was intended to obviate the manual operation of linotypes. It was designed by B. L. Green, a machinist employed by the Observer, who, at Johnson's suggestion left the Observer and became an employee of the Curtis B. Johnson Corporation. Several models of the machine were made and demonstrated prior to the incorporation of the Semagraph Company in February, 1933. At that time Johnson paid into the corporation $50,000 for all of its stock. The objects and powers stated in the charter were very broad; and it was also specifically set out that it was the purpose of the corporation to develop the Semagraph machine and its patents and the Semagraph typewriter and its patents. The new corporation took over the machines and the patents and the services of Green, the inventor. It borrowed large sums of money from the Curtis B. Johnson Corporation and from Johnson individually. On March 31, 1935 the Curtis B. Johnson Company was merged with the taxpayer corporation under the latter's name and thereupon the latter acquired the assets and assumed the responsibilities formerly belonging to each corporation. Johnson received all the shares of the merged corporation in exchange for his old stock in both companies. Immediately before the merger the taxpayer had an earned surplus of $8,756.42, while the Johnson Corporation had a paid-in surplus of $666,121.16 and an earned surplus of $471,337.78.

Johnson was also the majority stockholder of the Charlotte Engraving Company, a manufacturing concern, and in 1937 purchased the minority interests and caused this corporation also to be merged with the taxpayer. Thereupon the taxpayer ceased to be a personal holding company for the purposes of the surtax on such companies.

From its incorporation the taxpayer has been engaged in the promotion of the invention and at the time of the trial had expended about $135,000 for this purpose. From time to time Johnson conferred with financiers, printing machine company executives and newspaper publishers and endeavored to enlist their financial cooperation so that the new machine might be manufactured and distributed. He sought the advice of persons in whose judgment he had confidence as to the amount of capital that would be required for the manufacture and sale of the machine, and from their advice and from his own experience in the newspaper business formed the opinion that it would take not less than five million dollars to develop, promote and distribute the invention.

In 1938 a new and improved model was completed and was demonstrated by the transmission of a full page of printed matter from New York to the composing room of the Observer at Charlotte, where it was automatically reduced to type. The last model was put to a fifteen month test in connection with the publication of the Observer commencing in May 1940, and it was not

known until August, 1941 that the Semagraph would be a practical success. Various United States and foreign patents covering the invention were granted during the period 1932 to 1940, the majority issuing in 1937.

For the taxable year ending March 31, 1934 the taxpayer sustained a loss of approximately $5,000. In each year thereafter through March 31, 1940 it had a taxable net income ranging from $3,932.79 in 1935 to $64,255.62 in 1937. During the tax years in question, which ended March 31, 1939 and March 31, 1940, the taxpayer's taxable net income was $14,816.18 and $34,154.96 respectively. In computing the net income, deductions of approximately $21,000 in 1939 and $13,000 in 1940 were made for abandoned models, patterns and tools. Only one dividend was paid by the taxpayer from its beginning through March 31, 1940, that is, a dividend of $10,000 during the tax year ended March 31, 1938 which was paid because of the advent of the undistributed profits tax. A dividend of $10,000 was paid in 1941 and a dividend of $30,000 in 1942.

If the taxpayer's income for the years in question had been distributed, Johnson would have been compelled to pay additional income taxes, including surtaxes of $7,108.49 for 1939 and $19,581.10 for 1940. The question to be decided is whether the taxpayer was availed of in each of these years in order to prevent the imposition of the surtax upon Johnson by permitting the earnings and profits to accumulate instead of being distributed.

The taxpayer claims that it was proved by the clear preponderance of the evidence outlined in the aforegoing statement that the earnings and profits accumulated in the fiscal years 1939 and 1940 did not exceed the reasonable needs of the business and were not retained in order to avoid the imposition of surtaxes upon the only shareholder. Undoubtedly there was substantial evidence to support this view. The contact between the principal owner of an important newspaper and employee who had devised a machine which gave promise of great improvement in the setting of type for the paper came about in a natural manner. Considerable progress was made in the field of experimentation and in the development of the machine, before the incorporation of the Semagraph Company took place. The purpose of that company undoubtedly was to develop the invention and to reduce the idea to practical form, and it is conceded that the corporation was formed for this purpose and not for the purpose of avoiding the imposition of surtaxes upon Johnson. The confidence of the interested parties in the development of the machine was shown by the expenditure of a large sum of money in the construction of models and in the securing of patents in this and foreign countries. All of these activities consumed considerable time as well as money and it was not until after the tax years in question had passed that the machine was finally determined to be a practical success. Johnson himself was a successful business man of long experience in the publishing field, and was convinced after intimate acquaintance with the project for more than four years that it would require not less than five million dollars to perfect the invention, manufacture the machines and promote their sale on a large scale. All of these facts have a tendency to show that the accumulation of the profits for the fiscal years 1939 and 1940 was made for the reasonable purposes of the business since the assets of the corporation even after the mergers above described were insufficient to accomplish the ends in view.

But, on the other hand, the evidence is not all one way and does not lead inevitably to the conclusion for which the taxpayer contends. It is important to bear in mind that Johnson was the sole shareholder of the taxpayer corporation and that the control of its finances was completely in his hands. Moreover, it is not unreasonable to infer that the corporate mergers above described were made to some extent at least with an eye to the problems which Johnson as an individual taxpayer was obliged to meet. It is certain that the large sums of money which the Semagraph Company borrowed from the Curtis B. Johnson Company and from Johnson in 1933, after its incorporation, and the large funds which came into the possession of the Semagraph Company upon its merger with the Curtis B. Johnson Company in 1935, were not needed or used to any great extent by the Semagraph Company in the development of the invention. By far the greater part of the assets of the taxpayer corporation was invested in securities and was not used in the development of the machine. It would seem that these funds were held by the taxpayer corporation primarily for the convenience of Johnson individually and not for the development of the invention. Finally, there is the fact that John-

son decided that a new company should be formed for the production of the semagraph, which would be financed principally by the sale of stock in this new corporation to others, and this new corporation was to acquire only the machine and the patents from the present Semagraph Company. It was not contemplated that the securities held by Semagraph Company should be turned over to the new corporation. In short, there was ground for the inference of the Tax Court that in 1939 and 1940 the assets of the Semagraph Company were not being held for the sole purpose of developing the Semagraph enterprise but for other purposes of the sole owner. In addition, it should be pointed out that in 1938, the year before, and in 1941 and 1942, the year after the tax years in question, dividends were paid by the Semagraph Company although the need for funds for the promotion and development of the invention was constant throughout the whole period.

We conclude that the issue was one of fact and since this court is bound to accept the findings of fact of the Tax Court when supported by substantial evidence, the decision of the Tax Court must be

Affirmed.